UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JOSIE P. WATTLEY, | |
|     Plaintiff, | |
| v. | Case No. 1:21-CV-232 JD |
| ACTING COMMISSIONER OF SOCIAL SECURITY, | |
|     Defendant. | |

**OPINION AND ORDER**

Plaintiff Josie Wattley appeals the denial of her claim for disability insurance benefits. For the following reasons, the Court will remand this matter to the Commissioner for further proceedings consistent with this opinion.

**A. Background**

Ms. Wattley filed an application for disability insurance benefits, alleging disability beginning August 31, 2015. Her date of last insured was December 31, 2020. Ms. Wattley's application was denied initially, on reconsideration, and following two hearings before an Administrative Law Judge ("ALJ").[1] Ms. Wattley indicated her disability was caused by physical health issues, including rheumatoid arthritis, degenerative changes of the cervical spine, bilateral carpal tunnel syndrome, COPD and obesity, and mental health issues, including depression,

---

[1] After the initial adverse ALJ decision, Ms. Wattley appealed and raised a challenge to the ALJ's authority under the Appointments Clause of the United States Constitution. U.S. Const. Art. II, § 2, cl.2. The Appeals Council remanded the case for a new hearing and decision before a different ALJ whose appointment had been approved by the Commissioner of Social Security. (DE. 10 at 24.) Unless otherwise specified, all references to "the ALJ" or "the ALJ's decision" will be to the most recent ALJ decision.

generalized anxiety disorder, and panic disorder. (R. at 27.) The ALJ found that Ms. Wattley had some severe impairments but that she had not been disabled since August 31, 2015.

In particular, at Step Two of her analysis, the ALJ found that Ms. Wattley's mental health issues were supported by medical evidence in the record but did not rise to the level of a severe impairment. This evidence included a series of medical appointments in which Ms. Wattley indicated feelings of anxiety and was prescribed medication to manage anxiety disorder. (R. at 28–29.) This also included a psychological consultative examination which noted that Ms. Wattley's mood suggested feelings of anxiety and that she appeared to have minor problems recalling information. (R. at 29.) The ALJ ultimately found that Ms. Wattley's mental health issues constituted "mild" limitations in all four of the Paragraph B criteria used to rate the severity of mental impairments. The four Paragraph B criteria are: (1) understanding, remembering, or applying information, (2) interacting with others, (3) concentrating, persisting, or maintaining pace, and (4) adapting or managing oneself. (R. at 28.) The Appeals Council denied review of the ALJ decision, making the ALJ's decision the final determination of the Commissioner.

### B. Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The Court will affirm the Commissioner's denial of disability benefits if it is supported by substantial evidence. *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). It must be

"more than a scintilla but may be less than a preponderance." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court will affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008).

In this substantial evidence determination, the Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). The Court does, however, critically review the record to ensure that the ALJ's decision is supported by the evidence and contains an adequate discussion of the issues. *Id.* The ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection; he may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must also "articulate at some minimal level his analysis of the evidence" to permit informed review. *Id.* Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, he must provide a "logical bridge" between the evidence and his conclusions. *Terry v. Astrue,* 580 F.3d 471, 475 (7th Cir. 2009).

### C. Standard for Disability

Disability benefits are available only to individuals who are disabled under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations contain a five-step test to ascertain

whether the claimant has established a disability. 20 C.F.R. §§ 404.1520, 416.920. These steps require the Court to sequentially determine:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the national economy.

*Id.; Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, the Commissioner acknowledges disability. *See* 20 C.F.R. §§ 404.1520, 416.920. However, if a listing is not met or equaled, the ALJ must assess the claimant's residual functional capacity ("RFC") between steps three and four. The RFC is then used to determine whether the claimant can perform past work under step four and whether the claimant can perform other work in society at step five. *See id.* The claimant has the burden of proof in steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**D. Discussion**

Ms. Wattley raises several arguments in favor of remand, including that the ALJ did not properly consider Ms. Wattley's mental limitations, the ALJ erred in evaluating Ms. Wattley's physical symptoms, and the ALJ failed to properly formulate her physical RFC. The Court only

needs to address one of these arguments to resolve this appeal. That argument is that the ALJ erred by not accounting for Ms. Wattley's mental limitations in her RFC or otherwise explaining why they were excluded. The Court agrees that the RFC does not incorporate the mental limitations which the ALJ found and that the omission of these limitations requires remand.

At Step Two of her analysis, the ALJ found that Ms. Wattley's mental health issues constituted mild limitations in all four of the Paragraph B criteria, as explained above. However, despite this finding, the ALJ did not discuss these impairments in formulating her RFC or incorporate any mental impairment related restrictions into her RFC. As Ms. Wattley appropriately notes, this omission runs afoul of Seventh Circuit precedent requiring ALJs consider all of a plaintiff's impairments in formulating their RFC, even if the impairments are by themselves not severe. *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016) (ALJs must assess the combined effects of a claimant's impairments, including those which are not severe); *see also John P. v. Saul*, 2019 WL 2072118, *4 (N.D. Ind. Aug. 28, 2019) (holding an ALJ is required to fully consider a plaintiff's mental impairments in her RFC regardless of their severity).

In particular, courts of this District have noted that even "mild" impairments can put disproportionately greater strain on a person who is concurrently suffering from a more severe affliction and therefore such conditions must be considered by an ALJ when formulating the RFC. *John P.*, 2019 WL 4072118 at *5 (citing to *Winfield v. Comm'r of Soc. Sec.*, 2013 WL 692408 *4–5 (N.D. Ind. Feb. 25, 2013) (internal citations omitted)). The absence of analysis by the ALJ indicating she considered Ms. Wattley's mental limitations in formulating her RFC means the Court cannot undertake an informed review of her decision. *Zurawski*, 245 F.3d at 887. This leaves the Court no choice but to order a remand for the ALJ to perform the necessary analysis.

The Commissioner's response does not directly address the ALJ's omission. Rather the Commissioner's brief restates that the mental impairments were found to be "mild" limitations, were not severe, and did not significantly limit her ability to perform work related activities. (DE 17 at 4.) The implied argument here seems to be that the ALJ was not required to consider Ms. Wattley's mental impairments because they were not severe. At no point does the Commissioner address the precedent in this Circuit which requires the ALJ to consider all of a claimant's limitations, even mild ones, in formulating her RFC. *See Terry*, 580 F.3d at 477; *see also John P.*, 2019 WL 2072118 at *4.

Additionally, the Commissioner seems to argue that the ALJ's decision should be sustained as the ALJ provided sufficient reasoning on the issue of mental impairment to satisfy the deferential standard of review. The Commissioner directs the Court to the ALJ's statement, at the conclusion of her Step Two analysis, that "despite generally normal mental status findings, the undersigned considered the claimant's testimony that pain affects her ability to concentrate." (R. at 29.) The Court notes, however, that this statement alone fails to address the totality of Ms. Wattley's mental health limitations. The Commissioner also notes that the ALJ "gave great weight" to the state agency assessment that Ms. Wattley "'appear[s] limited primarily by physical issues/complaints.'" (DE 17 at 5 (citing R. at 126)). The Commissioner then notes that the ALJ explained she incorporated restrictions into her RFC which would "minimize the physical stressors" that could exacerbate Ms. Wattley's pain. (R. at 29.)

This does not answer the question of why the ALJ did not incorporate her mental impairment findings into the RFC despite the legal precedent requiring her to do so. At worst, this argument is simply not responsive to the argument being raised by Ms. Wattley. While it may be true the ALJ found Ms. Wattley was *primarily* limited by physical issues, the ALJ also

explicitly found there were mental impairments but is silent on how she considered those impairments or how they were incorporated into her RFC. The Commissioner restating what the ALJ *did* find regarding physical impairments simply does not explain why the ALJ *did not* discuss her mental impairment findings nor incorporate them in the RFC.

The Court will also note that the Commissioner's brief, and its emphasis on the state agency assessment, lacks any reference to the report of the agency's own psychological consultative examiner, Dr. Predina. This omission is particularly notable given the ALJ's explicit use of Dr. Predina's report as evidence to conclude Ms. Wattley had mild mental limitations. (R. at 29.) The Commissioner's brief offers no explanation for its selective discussion of the evidence the ALJ stated she relied on.

Alternatively, the Commissioner may be arguing the ALJ did consider the limitation findings and then discarded or discounted those findings from the RFC after further analysis. In other words, the Commissioner may wish the Court to believe that the ALJ found in her Step Two analysis that Ms. Wattley has mild mental limitations in the Paragraph B criteria. Then the ALJ abruptly and indirectly discounted those findings by noting Ms. Wattley had "generally normal mental status findings" and only discussing the impact of Ms. Wattley's pain on her ability to concentrate as a part of the RFC.

The Court is not persuaded that the ALJ intended such an abrupt turnabout in her conclusion given her prior analysis and references to the record finding that Ms. Wattley had mild mental impairments in all four of the Paragraph B criteria. (R. at 27–28.) Further, even if that was the ALJ's intent, such abbreviated analysis would be insufficient to inform the Court of her reasoning and establish the logical bridge necessary to sustain the finding on appeal. *See Miller v. Comm'r of Soc. Sec.*, 2017 WL 1421271, *8 (N.D. Ind. Apr. 21, 2017) (Holding that an

7

ALJ merely stating that the RFC "reflects the degree of limitation [they] found at Paragraph B mental function analysis" is insufficient to establish a logical bridge and show the reviewing court the ALJ considered the claimant's mild limitations). As such, the Court is not persuaded by the Commissioner's explanations for the ALJ omitting discussion of Ms. Wattley's mental impairments.

The Court also finds that the omission of Ms. Wattley's mental impairments from the RFC is not harmless error as the proper consideration of the impairments could have resulted in a different outcome. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022) (An error is harmless if the ALJ would have reached the same result even without the error). As previously discussed, ALJs are required to consider all impairments in the aggregate in constructing an RFC, regardless of the severity of any individual impairment. *Terry*, 580 F.3d at 477; *Golemiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (holding ALJs must consider a claimant's impairments in the aggregate). Further, other courts within this District have held that "even mild limitations in understanding, remembering or applying information and concentrating, persisting or maintaining pace can impact an individual's ability to perform past semi-skilled work." *John P.*, 2019 WL 4072118 at *4 (citing *Winfield*, 2013 WL 692408 at *3).

The ALJ ultimately found that Ms. Wattley was not disabled because, even with the restrictions imposed in the RFC, she was capable of performing past relevant work as a dispatcher. (R. at 37.) In making this finding, the ALJ relied on the testimony of the Vocational Examiner ("VE") who stated that dispatcher is a semi-skilled position (R. at 76) and that the manner in which Ms. Wattley had previously performed the job was the same as how it was performed generally (R. at 73–74). However, Ms. Wattley testified before the ALJ that her

mental impairments were part of the reason she stopped working, as they affected her ability to concentrate and manage the numerous rapid paced tasks which her job required. (R. at 53.)

Without clear analysis from the ALJ on why Ms. Wattley could resume her semi-skilled employment despite her mental limitations, the Court cannot conclude the ALJ would have reached the same result without the error.

Accordingly, the Court concludes that the ALJ's omission of Ms. Wattley's mental impairments from her RFC analysis, without further explanation, is an error which requires remand. As the Court did not need to reach any of the other arguments raised by Ms. Wattley in order to resolve this appeal, Ms. Wattley may raise them before the ALJ.

**E. Conclusion**

While Ms. Wattley has requested the Court award benefits, the remedy for the ALJ's shortcomings is further consideration, not the immediate award of benefits. And so, for the reasons stated herein, the Court REVERSES the Commissioner's decision and REMANDS this matter to the Commissioner for further proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: June 30, 2022

                                               /s/ JON E. DEGUILIO
                                             Chief Judge
                                             United States District Court